# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IGNACIO RODRIGUEZ, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-4546 |
| | § | |
| OCWEN LOAN SERVICING, INC., | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Ocwen Loan Servicing, Inc.'s ("Ocwen") Motion to Dismiss [Doc. # 5]. Plaintiff Ignacio Rodriguez has responded [Doc. # 7][1] and Ocwen has replied [Doc. # 6]. Upon review of the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that Ocwen's Motion to Dismiss is **granted**.

## I.   BACKGROUND

On April 10, 2007, Plaintiff Ignacio Rodriguez applied for a loan to purchase real property located at 4522 Hanley Street in Houston, Texas (the "Hanley property"). Defendant Ocwen was the loan servicer of a mortgage on the property,

---

[1]     Rodriguez filed his response one day late. However, because there is no indication that Ocwen was prejudiced by the delay, and in the interests of justice, the Court will deem Rodriguez's response timely filed.

so Rodriguez's lender contacted Ocwen to request a "payoff."  The payoff quote provided by Ocwen listed various costs and fees associated with the property, including principal, interest, and various "foreclosure" fees and costs.[2]  On April 16, 2007, Rodriguez purchased the Hanley property from its owners, Eusebio and Delia M. Olivares for $10.[3]  The Olivareses executed a general warranty deed to Rodriguez, which Rodriguez filed with the Harris County Clerk on May 3, 2007.  On May 2, 2007, Rodriguez sent a notice of loan approval to Ocwen.

Allegedly unbeknownst to Rodriguez, in April 2007, the Hanley property was in the process of foreclosure.  Ocwen, pursuant to Texas law, had allegedly provided statutory notice of the pending foreclosure in March and April,[4] and sold the property at public auction to a third party on May 1, 2007. Rodriguez claims that he did not receive confirmation of the foreclosure sale until July 2007,[5] by which time he had

---

[2]    *See* Plaintiff's Original Petition ("Complaint") [Doc. # 1-3], Exh. 1: "Payoff Request."

A mortgage servicer is defined as "the last person to whom a mortgage has been instructed by the current mortgagee to send payments for the debt secured by a security interest." TEX. PROP. CODE § 51.0001(3).  "[L]oan servicers, via agreement with the note's owner, can obtain the ability to foreclose" on property securing a loan.  *See Lozano v. Ocwen Fed. Bank*, 489 F.3d 636, 637 n.2 (5th Cir.2007) (citing *Pilcher v. Direct Equity Lending*, 189 F. Supp. 2d 1198, 1205 (D. Kan. 2002); TEX. PROP. CODE § 51.002(d)).

[3]    *See* Complaint [Doc. # 1-3], Exh. 2: "General Warranty Deed."

[4]    *See id.*, Exh. 5: "Substitute Trustee's Deed."

[5]    *See id.*, Exh. 4: "Letter from Ocwen Regarding the Hanley Property."

invested substantial funds to improve the Hanley property.  He thereafter filed this lawsuit, alleging wrongful foreclosure and related claims against Ocwen.

## II.   <u>STANDARDS OF LAW</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.  *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).  The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.  *Id.*  A claim is legally insufficient under Rule 12(b)(6) "only if there is no set of facts that could be proven consistent with the allegations in the complaint that would entitle the plaintiff to relief."  *Power Entm't, Inc. v. Nat'l Football League Prop., Inc.*, 151 F.3d 247, 249 (5th Cir. 1998).  However, "a statement of facts that merely creates a suspicion that the pleader might have a right of action" is insufficient to overcome a motion to dismiss.  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE:  CIVIL 2D § 1216 at 156–59).

A cause of action can fail to state a "claim upon which relief can be granted" if, *inter alia*, it fails to comply with the requirements of Rule 8(a)(2).  *See, e.g.*, *Buerger v. Sw. Bell Tel. Co.*, 982 F. Supp. 1247, 1249–50 (E.D. Tex. 1997); *Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, 201 F. App'x 988, *2

(5th Cir. Oct. 9, 2006) ("[A] Rule 12(b)(6) motion to dismiss for failure to state a claim may be a proper vehicle to challenge the sufficiency of a pleading under Rule 8."). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  The United States Supreme Court has made clear, however, that a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964–65 (2007) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. "Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests." *Id.* at 1965 n.3 (internal quotations omitted).  When the complaint contains inadequate factual allegations, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 1966.  "[A] district court must retain the power to insist upon some specificity in pleading before allowing a

potentially massive factual controversy to proceed." *Id*. at 1967 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)).

In addition, Rule 9 of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b); *see Leatherman v. Tarrant County Narcotics Intelligence Unit*, 507 U.S. 163, 168–69 (1993); *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). In particular, the pleadings should "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177–78 (5th Cir. 1997)). Rule 9(b) requires a plaintiff to allege the existence of *facts* sufficient to warrant the pleaded conclusion that fraud has occurred. *See In re Haber Oil Co.*, 12 F.3d 426, 439 (5th Cir. 1994) (emphasis added). Because the requirements of Rule 9 are more stringent than those for Rule 8, the Supreme Court's decision in *Twombly* applies with at least equal force to the Rule 9 pleading requirements.

Finally, although a Court, in considering a motion to dismiss for failure to state a claim, must ordinarily limit itself to the contents of the pleadings, "documents that a defendant attach[s] to a motion to dismiss [may be] considered part of the pleading

if they are referred to in the plaintiff's complaint and are central to her claim."

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993));

*see also Wilkins v. North American Construction Corp.*, 173 F. Supp. 2d 601, 617

(S.D. Tex. 2001).

## III.   ANALYSIS

Although Rodriguez only lists one "count" in his Complaint for violations of

Texas Property Code § 51.002, a Texas law governing foreclosure sales, subsequent

statements in his Complaint suggest various additional claims.  Ocwen has interpreted

Rodriguez's Complaint as alleging violations of § 51.002, breach of contract, tortious

interference with contract, and fraud.  Rodriguez has only responded to arguments

challenging the statutory claim.[6]  Nonetheless, the Court addresses each of the claims

---

[6]     It is also possible that Rodriguez is raising a breach of fiduciary duty claim.  His Complaint
states:

> Defendant committed actual fraud knowing that Plaintiff relied upon
> Defendant's honesty in dealing with Plaintiff's request for payoff and
> Defendant would send notice of impending foreclosure sale to Sellers in
> accordance with the Substitute Trustee's Deed, by which Sellers would have
> informed Plaintiff.  Actual fraud may also include breaches of fiduciary duty.
> . . . Defendant certainly had fiduciary duty to Sellers being the trustee to
> inform Sellers as well as to provide notice of the May 1, 2007 foreclosure
> sale.  Defendant failed to send notice to Sellers accordingly and failed to
> record the notice of as required by the statute.  Therefore, Defendant breached
> its fiduciary duty to Sellers and Plaintiff as it failed to follow its contractual
> commitment.

(continued...)

identified by Ocwen in turn.[7]

## A.   <u>Violation of Texas Property Code § 51.002</u>

Under Texas law, wrongful foreclosure occurs when a foreclosure sale is improperly conducted and results in recovery of an inadequate price for the foreclosed property. *See American Sav. & Loan Ass's v. Musick*, 531 S.W.2d 581 (Tex. 1975). A debtor may recover "for common law wrongful foreclosure only if the mortgagee either (1) fails to comply with statutory or contractual terms, or (2)

---

[6]      (...continued)
Complaint [Doc. # 1-3], ¶ 18 (reproduced as stated in the Complaint). Ocwen, in its Motion to Dismiss, makes no arguments concerning a potential claim for a breach of fiduciary duty and Rodriguez in his Response does nothing to clarify what claim(s) he intends to bring. Nonetheless, to the extent these allegations are intended to state a claim for a breach of fiduciary duty, that claim fails. In order to bring a claim for a breach of fiduciary duty, a plaintiff must establish, *inter alia*, that the plaintiff and defendant had a fiduciary relationship. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.–Dallas 2006, pet. denied). In this case, Rodriguez makes no allegations establishing such a duty flowing from Ocwen to him, and the undisputed documentary evidence provided by Rodriguez demonstrates that he was not even known to Ocwen until May 2, 2007, the day after the May 1, 2007 foreclosure sale. Moreover, "Texas courts have held that the relationship between a borrower and a lender is not a fiduciary one." *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, (citing *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 36 (Tex. App.–Houston [14th Dist.] 2005, pet. denied). Thus, putting aside whether Rodriguez even has standing to complain about Ocwen's alleged wrongful conduct towards the Olivareses (for whom it was a mortgage servicer and not a trustee, as Rodriguez asserts), he has failed to state a cognizable claim for a breach of fiduciary duty.

[7]      The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal. *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (citing *Dowthitt v. Johnson,* 230 F.3d 733, 747 n.16 (5th Cir.2000); *Johnson v. Puckett,* 176 F.3d 809, 814 (5th Cir.1999)). By analogy, failure to brief an argument in the district court waives that argument in that court. However, in the interests of justice, the Court addresses the merits of each claim fairly raised in Rodriguez's Complaint.

complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure process."  *First State Bank v. Keilman*, 851 S.W.2d 914, 921–22 (Tex. App.–Austin 1993, writ denied).  Rodriguez alleges that Ocwen failed to comply with statutory and contractual requirements governing the sale of the Hanley property.  Specifically, Rodriguez claims that Ocwen, acting with malice,[8] violated § 51.002 of the Texas Property Code.[9]

Texas Property Code § 51.002 establishes certain requirements governing foreclosure sales.  Among other things, notice of the sale must be given at least twenty-one days before the date of the sale by:

> (1)  posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;

> (2)  filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and

> (3)  serving written notice of the sale by certified mail on each debtor

---

[8]  *See* Complaint [Doc. # 1-3], ¶ 17.

[9]  Rodriguez seeks "$158,000 in actual damages, . . . including construction and material costs for the improvement to the [Hanley p]roperty, payment to Sellers, title works[,] and legal representation."  Alternatively, he seeks recovery of "$160,000 in lost sale of the [p]roperty."  Rodriguez also requests exemplary damages because his "injury resulted from Defendant's malice or actual fraud."  *See id.* ¶ 16.  The Court notes that a plaintiff who seeks to set aside a sale for wrongful foreclosure is limited to "two alternative remedies. [He] may elect to: (1) set aside the void trustee's debt; or (2) recover damages in the amount of the value of the property less indebtedness."  *Diversified, Inc. v. Gibraltar Sav. Ass'n*, 762 S.W.2d 620, 623 (Tex. App.–Houston [14th Dist] 1988, writ denied).

who, according to the records of the mortgage servicer of the
debt, is obligated to pay the debt.

TEX. PROP. CODE § 51.002(b).

Rodriguez claims that he was not provided with proper notice of the
foreclosure sale of the Hanley property as required under this provision, suggesting
that Ocwen owed him a duty to provide personal notice.[10]  To the extent he makes this
claim, it fails. Nothing in § 51.002 provides that Rodriguez was entitled to personal
notice of the foreclosure sale.  *See American Sav. & Loan Ass'n*, 531 S.W.2d at 588
("There is no requirement that personal notice be given to persons who were not
parties to the deed of trust."); *see also Stanley v. Citifinancial Mortgage Co.*, 121
S.W.3d 811, 817 (Tex. App.–Beaumont 2003, pet. denied).  Rodriguez does not
allege that he was a debtor on the loan held by Ocwen and he cannot claim that he
was the record owner of the property at times relevant to the foreclosure sale, as he
did not file his deed of sale with the Harris County Clerk until May 3, 2007—two
days after the sale.  *See Abraham v. Ryland Mortg. Co.*, 995 S.W.2d 890, 893 (Tex.
App.–El Paso 1999, no pet.) ("A conveyance of real property or an interest in real
property or a mortgage or deed of trust is void as to a creditor or to a subsequent
purchaser for a valuable consideration without notice unless the instrument has been
acknowledged, sworn to, or proved and filed for record as required by law." (quoting

---

[10]     *See* Complaint [Doc. # 1-3], ¶ 10.

TEX. PROP. CODE § 13.001(a)).

Rodriguez's argument that "a contractual relationship between . . . parties [is] not necessary in order for [a plaintiff] to maintain a suit for [the tort of wrongful foreclosure]" does not alter this conclusion. *See Lighthouse Church v. Tex. Bank*, 889 S.W.2d 595, 600 (Tex. App.–Houston [14th Dist.] 1994, writ denied). This argument —the only one raised by Rodriguez in support of his claim—concerns standing to bring a wrongful foreclosure claim, and as such, misses the point. The Court does not reach the question whether Rodriguez potentially has standing to bring his claim.[11] Assuming *arguendo* that he does, he has still failed to plead a cognizable claim. Rodriguez was not a legal party to the note or deed of trust permitting Ocwen to foreclose on the Hanley property. *See Stanley*, 121 S.W.3d at 816–19; *Long v. NCNB-Tex. Nat'l Bank*, 882 S.W.2d 861, 866 (Tex. App.–Corpus Christi 1994, no pet.); *see also Cuauhtli v. Chase Home Fin. LLC*, No. 4:06-CV-472-A, 2007 U.S. Dist. LEXIS 12185 (N.D. Tex. Feb. 22, 2007), *aff'd*, 2007 U.S. App. LEXIS 25462 (5th Cir. Oct. 31, 2007). Further, even if Rodriguez assumed the mortgage on the Hanley property when he received a deed from the Olivareses on April 16, 2007, he did not have that interest at the time Ocwen was obligated to notify debtors of the

---

[11]     *See Ursic v. NBC Bank South Tex.*, 827 S.W.2d 334, 336 (Tex. App.–Corpus Christi 1991, writ denied) ("To contest a bank's foreclosure . . . a party must, at the time of the foreclosure, either (1) be the mortgagor under the deed of trust or be in privity with the mortgagor, or (2) have an ownership interest in the property affected by the foreclosure.").

pending foreclosure—forty-one days prior to the planned foreclosure sale, which in this case, was on or around March 20, 2007.  *See* TEX. PROP. CODE § 51.002(d). Moreover, Rodriguez admits that he did not inform Ocwen of his intent to pay the Hanley mortgage until May 2, 2007 and did not record his deed until May 3, 2007. Thus, Rodriguez was not entitled to personal notice of the sale and cannot recover under this theory for violations of § 51.002.

To the extent Rodriguez is alleging that Ocwen failed generally to comply with the requirements of § 51.002, his claim also fails.  Rodriguez asserts that:

> Notice of the foreclosure sale was discovered through property search, which revealed a recording of May 8, 2007 for action taken by the substitute trustee on March 9, 2007.  Both dates are either remote or later in regard to the foreclosure sale date of May 1, 2007 and they fail to meet the statutory requirement of 21 days notice prior to the sale.[12]

Attached to Rodriguez's Complaint is a "Notice of Trustee's Sale" regarding the Hanley property.  The document purports to give notice, as required by § 51.002, of the planned foreclosure sale of the Hanley property, and includes a date stamp indicating that the document was filed with the Harris County Clerk on April 9, 2007—twenty-two days prior to the May 1, 2007 foreclosure sale, and thus, in compliance with § 51.002(b)(2).[13]

---

[12]     Complaint [Doc. # 1-3], ¶ 10.

[13]     *Id.*, Exh. 5: "Substitute Trustee's Deed," at 4.  Rodriguez makes no allegations, either in his
(continued...)

Rodriguez has also provided the Court with a copy of a letter he received from Ocwen detailing certain actions taken by the company prior to the foreclosure sale.[14] Ocwen states, and Rodriguez does not dispute, that it sent a foreclosure sale notice to the owner of the Hanley property, Eusebio Olivares, on March 9, 2007.[15] Rodriguez interprets this as an admission by Ocwen that it provided notice of an April 3, 2007 foreclosure sale, rather than the May 1, 2007 sale[16] and, hence, was not in compliance with § 51.002.[17]  However, this reasoning is flawed.  Under § 51.002, a mortgage servicer must "serve a debtor in default . . . with written notice . . . stating that the debtor is in default . . . and giving the debtor at least 20 days to cure the default *before* notice of sale can be given under Subsection (b)."  TEX. PROP. CODE § 51.002(d) (emphasis added).  Ocwen's letter to Mr. Olivares was sent thirty days in advance of its April 9, 2007 notice to the Harris County Clerk, as required under § 51.002 for Ocwen to pursue a May 2007 foreclosure sale.

---

[13]     (...continued)
         Complaint or his Response to Ocwen's Motion to Dismiss, that Ocwen failed to post a copy of the "Notice of Trustee's Sale" as required by § 51.002(b)(1).

[14]     *Id.*, Exh. 4:  "Letter from Ocwen Regarding the Hanley Property."

[15]     *Id.*

[16]     Under Texas law, foreclosure sales must be held on the first Tuesday of the month. TEX. PROP. CODE § 51.002(a).  Accordingly, the April 2007 foreclosure sale would have been held on April 3, 2007 and the May 2007 sale on May 1, 2007.

[17]     *See* Plaintiff's Response to Defendant's Motion to Dismiss [Doc. #7], ¶ 7.

If anything, Rodriguez has alleged facts demonstrating that Ocwen was in full compliance with § 51.002 with regard to the foreclosure sale of the Hanley property. Ocwen sent notice to Eusebio Olivares, the property debtor, on March 9, 2007—more than forty-one days before the planned foreclosure sale, as required by § 51.002(d).[18] Ocwen then provided statutory notice, as evidenced by documents attached to Rodriguez's Complaint, on April 9, 2007—twenty-two days prior to the May 1, 2007 sale, as required by § 51.002(b).  Therefore, Rodriguez fails to state a legally cognizable claim for violation of TEX. PROP. CODE § 51.002 and this claim is dismissed.  *See e.g.*, *Gooley v. Mobile Oil Corp.*, 851 F.2d 513, 514 (5th Cir. 1988) ("The [C]ourt must accept the well-pleaded factual averments of . . . [a] complaint as true, and construe those facts in the light most flattering to the [plaintiff's] cause . . . exempt[ing], of course, those 'facts' which have since been conclusively contradicted by [plaintiff's] concessions or otherwise, and likewise eschew[ing] any reliance on bald assertions [and] unsupportable conclusions.").

## B.   <u>Breach of Contract</u>

_____Rodriguez next alleges that Ocwen "breached its contractual terms of the Substitute Trustee's Deed for failing to provide the 21 day notice for the May 1, 2007

---

[18]     Additional evidence in support of this reading is the Substitute Trustee's Deed, which includes an Affidavit signed by the trustee of the Hanley property stating that notice of the sale was provided to Eusubio Olivares as required by Texas law.  *See* Complaint [Doc. # 1-3], Exh. 5: "Substitute Trustee's Deed."

foreclosure sale."[19]  Rodriguez attaches to his Complaint the deed referenced by this claim.[20]

First, as noted above, this claim is contradicted by documents attached to Rodriguez's Complaint which demonstrate that statutory notice of the foreclosure sale was provided on April 9, 2007—twenty-two days prior to the May 1, 2007 sale.  For this reason alone, Rodriguez's breach of contract claim may be dismissed.

However, Rodriguez also lacks standing to pursue this claim.  He was not a party to the contract he alleges was breached and offers no allegations to support a finding that he was an intended beneficiary of that contract.  "In Texas, a third party cannot bring an action on a contract unless the party shows that the contract was actually made for his benefit and that the parties intended that the contract be for his benefit."  *Mandell v. Hamman Oil & Ref. Co.*, 822 S.W.2d 153, 161 (Tex. App.–Houston [1st Dist.] 1991, writ denied) (citing *Merrimack Mutual Fire Ins. Co. v. Allied Fairbanks Bank*, 678 S.W.2d 574, 577 (Tex. App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.)).  "A contract will not be interpreted as having been made for the benefit of a third party unless it clearly appears that was the intention of the parties to the contract."  *Id.* (citing *Tex. Bank & Trust Co. v. Lone Star Life Ins. Co.*,

---

[19]     *See id.* ¶ 11.

[20]     *See id.*, Exh. 5: "Substitute Trustee's Deed."

565 S.W.2d 353, 357 (Tex. App.–Tyler 1978, no writ)).  The Court cannot conceive of any plausible reading of the Substitute Trustee's Deed for which Rodriguez may be considered an intended beneficiary.  *See Campbell*, 43 F.3d at 975 (On a motion to dismiss, "[t]he Court is not required to 'conjure up unpled allegations or construe elaborately arcane scripts to' save a complaint." (quoting *Gooley*, 851 F.2d at 514)).

Rodriguez alleges that his sole contact with Ocwen prior to the foreclosure sale was via a request from his lender for the "payoff" amount on the Hanley property. The document with which this request was made is attached to Rodriguez's Complaint and consists of a fax cover page from First Quantum Funding, Inc., stating the address of the Hanley property and requesting its "payoff."[21] The document does not name Rodriguez and was sent to Ocwen on April 10, 2007—one day after statutory notice of the intended foreclosure sale of the Hanley property was made. Rodriguez alleges  his next interaction with Ocwen was on May 2, 2007, when he claims to have sent Ocwen a "Notice of Loan Approval" regarding the Hanley property.  In addition, Rodriguez makes no allegations establishing any contact or relationship between himself and the grantees of the Substitute Trustee's Deed.[22]

---

[21]     *See id.*, Exh. 1: "Payoff Request."

[22]     It appears from documents attached to Rodriguez's Complaint that the Olivareses purchased the Hanley property via a note secured by a deed of trust authorizing the trustee or his substitute or successor to sell the property at a foreclosure sale in the event of default. Baxter & Schwartz, P.C. was the trustee assigned to the Hanley property by Ocwen, the mortgage
(continued...)

On these facts, it cannot be inferred that Rodriguez was an intended beneficiary of the Substitute Trustee's Deed executed by the trustee of the Hanley property in favor of the individuals who purchased the property at the foreclosure sale. Thus, Rodriguez does not have standing to sue for alleged breaches of contract associated with the Substitute Trustee's Deed. Accordingly, this claim must be dismissed.[23]

### C.   Tortious Interference with Contract

Rodriguez next appears to raise a claim for tortious interference with contract, alleging that "Defendant knew or had reason to know of Plaintiff's contract with [the Olivareses] by the request for payoff and the participation of First Quantum Funding, a licensed mortgage broker, which made direct inquiry to Defendant"[24] and that "Defendant willfully and intentionally interfered with Plaintiff's contract with [the Olivareses] by selling the [Hanley p]roperty substantially below the payoff amount . . . ."[25]

---

[22]   (...continued)
servicer on the Olivares note. A Baxter & Schwartz representative is the sole signatory to the Substitute Trustee's Deed. which conveys the Hanley property to third party purchasers. *See id.*, Exh. 5: "Substitute Trustee's Deed," at 2.

[23]   As noted previously, the Court addresses this claim despite the fact that Rodriguez, in his Response to Ocwen's Motion to Dismiss, did not respond to arguments raised by Ocwen concerning the viability of Rodriguez's possible contract claim. *See supra* note 6 and accompanying text.

[24]   Complaint [Doc. # 1-3], ¶ 12.

[25]   *Id.* ¶ 13.  To the extent Rodriguez complains that Ocwen wrongfully foreclosed on the
(continued...)

In order to prevail on a claim for tortious interference with an existing contract, a plaintiff must demonstrate "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of America v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Assuming, for the purposes of this discussion, that Rodriguez has alleged sufficient facts to proceed on this cause of action, his claim still fails. Ocwen has a valid defense to this claim, namely, that its alleged conduct was "privileged or justified," *id.* at 78, since Ocwen was entitled to pursue foreclosure on the Hanley property.

"The justification defense is based on either the exercise of: (1) one's own legal rights; or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken." *Abraham*, 995 S.W.2d at 895. At least one Texas court has held that where a defendant mortgagee or mortgage servicer presents evidence that a note secured by a deed of trust permitting foreclosure in the event of default forecloses on the property subject to the deed, the defendant has a complete defense to tortious interference with contract under the circumstances presented in

---

[25]    (...continued)
Hanley property by selling it for less than the payoff amount, the Court notes that "[m]ere inadequacy of consideration alone does not render a foreclosure sale void if the sale was legally and fairly made." *Tarrant Sav. Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473, 475 (Tex. 1965); *see also American Sav. & Loan Ass'n*, 531 S.W.2d at 587.

this case. *See id.*

Here, Rodriguez has provided, and does not dispute the validity of, documentary evidence that the Hanley property was subject to a deed of trust permitting foreclosure in the event of default and that the Olivareses had defaulted on their note.[26]  Ocwen was well within its rights to foreclose on the property and accordingly, Rodriguez's tortious interference with contract claim must be dismissed. *See Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) ("[A] claim may . . . be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.").

## D.   <u>Fraud</u>

<u>      </u>Finally, Rodriguez alleges that Ocwen "committed actual fraud knowing that Plaintiff relied upon Defendant's honesty in dealing with Plaintiff's request for payoff and Defendant would send notice of impending foreclosure sale to Sellers in accordance with the Substitute Trustee's Deed, by which Sellers would have informed Plaintiff."[27]   As a claim for fraud, this is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires the plaintiff to plead his claim with particularity. *Tuchman v. DSC Commc'n Corp.*, 14 F.3d 1061,

---

[26]     *See* Complaint [Doc. # 1-3], Exh. 1: "Payoff Request" (indicating that the Hanley property was in foreclosure); *id.*, Exh. 5: "Substitute Trustee's Deed."

[27]     *Id.* ¶ 18.

1068 (5th Cir. 1994).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997); *see also Askanase v. Fatjo*, 148 F.R.D. 570, 574 (S.D. Tex. 1993) ("The allegations should allege the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants.").

Rodriguez's claim fails to meet this standard.  Rodriguez does not identify any fraudulent statements made by Ocwen and instead suggests that Ocwen committed fraud against Rodriguez by allegedly failing to provide statutory notice of the pending foreclosure sale of the Hanley property to the Olivareses.  However, even if it is true that Ocwen did not provide proper notice to the Olivareses, Rodriguez lacks standing to bring this claim.

A cause of action for fraud may be premised on a defendant's failure to disclose information where there is a duty on the defendant to do so.  *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997).  A duty to disclose may arise when (1) the parties have a confidential or fiduciary relationship; (2) one party voluntarily makes a representation, which gives rise to the duty to disclose the whole truth; (3) one party

makes a representation, which gives rise to the duty to disclose new information the party is aware of that makes the earlier representation misleading or untrue; or (4) one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak. *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.*, 217 S.W.3d 653, 670–71 (Tex. App.–Houston [14th Dist.] 2006, pet. denied).  In this case, Rodriguez has alleged no facts establishing a duty to disclose on the part of Ocwen.  As noted previously, Rodriguez was not known to Ocwen until after the May 1, 2007 foreclosure sale, and thus, Ocwen did not have any relationship with Rodriguez creating a duty to disclose.  Moreover, even if a duty to disclose arose when Ocwen provided Rodriguez's lender with the "payoff" on the Hanley property, there is nothing in that document, or in any other evidence before the Court, to suggest that Ocwen was concealing its intent to foreclose on the property.  The payoff lists a variety of "foreclosure" costs and fees and was requested by Rodriguez's lender one day after Ocwen provided statutory notice of the planned foreclosure sale to the Harris County Clerk.[28]  Thus, Ocwen, in providing the payoff, did not somehow disclose only a partial truth, or otherwise assume a duty to personally disclose to Rodriguez details of the planned foreclosure sale.

      To the extent Rodriguez is alleging that Ocwen falsely claimed, in its July 2007

---

[28]   *See id.*, Exh. 1: "Payoff Request."

20

letter to Rodriguez confirming the details of the foreclosure sale, that it had provided notice to the Olivareses,[29] this, too, fails to adequately allege fraud. A *prima facie* case of fraud involving an affirmative misrepresentation requires a plaintiff to establish:

> (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).   Even if Ocwen falsely stated in its July letter to Rodriguez that it provided notice to Mr. Olivares of the pending foreclosure sale, it cannot be said that Rodriguez relied on this statement to his detriment, as the statement was made to him more than two months after he purchased the Hanley property and made improvements to it.

Accordingly, Rodriguez fails in this claim to adequately allege fraud, and the claim is dismissed.   *See Clark*, 794 F.2d at 970 (holding that a claim may be dismissed under Rule 12(b)(6) if the complaint "on its face show[s] a bar to relief").

## IV.   **CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Ocwen Loan Servicing, LLC's Motion to Dismiss is **granted**.

---

[29]   *See id.*, Exh. 4: "Letter from Ocwen Regarding the Hanley Property."

This case is **dismissed with prejudice**.

A separate final judgment will be entered.

SIGNED at Houston, Texas, this 29<u>th</u> day of **January, 2008**.

Nancy F. Atlas
United States District Judge